J-A18002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
           :            PENNSYLVANIA
         Appellee    :
           :
          v.       :
           :
LaQUINCEY ANTRON WATSON,       :
           :
         Appellant    :        No. 900 MDA 2013

Appeal from the Judgment of Sentence entered on April 23, 2013
in the Court of Common Pleas of Dauphin County,
Criminal Division, No. CP-22-CR-0004167-2010

BEFORE: LAZARUS, WECHT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:        **FILED AUGUST 11, 2014**

LaQuincey Antron Watson ("Watson") appeals from the judgment of

sentence imposed following his convictions of twelve counts of burglary and

one count each of robbery, receiving stolen property, and possession of a

firearm.[1] We affirm.

The trial court has set forth an extensive recitation of the underlying

facts in its Opinion, which we adopt for the purpose of this appeal. **See** Trial

Court Opinion, 10/28/13, at 1-12. Relevantly, Detective James Glucksman

("Glucksman") worked as a police officer for eleven years and investigated

between 600 and 1,000 burglaries, including serial burglary cases.

Glucksman became involved with this case on March 5, 2010, when he was

ordered to investigate the third burglary in Lower Paxton Township that

---

[1] **See** 18 Pa.C.S.A. §§ 3502, 3701(a)(1)(ii), 3925, 6105(a)(1).

weekend. Glucksman determined that a witness had encountered the burglar and, based on the information and description provided, assembled a photo array for review by the witness, which ultimately led to the identification of Watson as a suspect. The burglaries that occurred in Glucksman's patrol zone, and other surrounding areas, fit a pattern of burglaries wherein the *modus operandi* involved parking a car in the home's driveway and kicking in a door in order to gain access during daylight hours. Watson was subsequently arrested and Glucksman obtained a search warrant for Watson's residence.

Glucksman searched for, *inter alia*, a pair of sneakers that had a tread pattern consistent with marks recovered from the door of a home that had been robbed. While conducting the search, Glucksman seized two pairs of sneakers matching the tread pattern and photographed a gun holster, cameras, jewelry, laptop, coins and radios. Glucksman subsequently received an anonymous tip that Watson's girlfriend had removed the photographed items from Watson's residence and was attempting to sell them on the internet. Glucksman contacted her, and, after observing the items in her apartment and confirming they were in fact reported as stolen, seized the items with her consent. Watson was charged with more than twenty crimes, predominantly burglaries, which took place over the course of approximately four months (November 2009-March 2010)

in four counties.[2] The stolen items included household electronics, jewelry, collectible coins, and other cash or coins. Watson moved to suppress this evidence at one of the pretrial hearings, but his Motion was denied.

Watson also filed a Motion to Sever Charges, a Motion for Severance of Charges Or, In The Alternative, A Bifurcated Trial ("Motion for Severance"), and a Motion to Exclude Admission of Cellular Telephone Tower "Ping" Evidence and Accompanying Expert Testimony ("Motion to Exclude"), all of which were denied.[3]

Watson's charges were consolidated and a jury trial was held in Dauphin County in September 2012. Watson was found guilty of the above-mentioned crimes, and acquitted on three counts of burglary. On December 17, 2012, Watson was sentenced to an aggregate sentence of 33½-67 years in prison. Watson filed a timely Post-Sentence Motion. On April 23, 2012, the trial court granted Watson's Post-Sentence Motion and issued an Amended Sentencing Order, stating that Watson was to serve 22-44½ years in prison. Watson filed a timely Notice of Appeal and a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

On appeal, Watson raises the following questions for our review:

---

[2] The Commonwealth dropped eleven of the charges, leaving Watson to face charges for 5 burglaries that occurred in Dauphin County, 5 burglaries that occurred in York County, 5 burglaries that occurred in Cumberland County, and 2 burglaries that occurred in Lancaster County.

[3] The other Motions made in Watson's Omnibus and Amended Omnibus Pretrial Motions are not relevant to this appeal.

I.      Whether the trial court erred in denying [Watson's] [M]otion to [S]uppress physical evidence and identification of evidence where the search exceeded the scope of the warrant and the plain view exception was [] inapplicable in violation of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

II.     Whether the trial court erred in denying [Watson's] [P]retrial [M]otion for [S]everance where the crimes were not part of a single criminal episode?

III.    Whether the trial court erred in denying [Watson's] [P]retrial [M]otion to [E]xclude Commonwealth's [C]ellular [T]elephone [T]ower "[P]ing" [E]vidence and [A]ccompanying [E]xpert [T]estimony where such is not generally accepted in the field of cell phone technology?

IV.     Whether the trial court erred in denying [Watson's] [M]otions for [M]istrial after the Commonwealth's witness repeatedly violated a pre[]trial order forbidding opinion testimony regarding the cellular phone records?

Brief for Appellant at 8.

In his first claim, Watson argues that the trial court erred in denying his Motion to Suppress and allowing the gun holster, cameras, coins, laptop, and radios that were manipulated, photographed, and eventually seized by Glucksman, to be introduced as evidence. *Id.* at 31, 33. Watson claims that these items were outside of the four corners of the search warrant; Glucksman had no reason to suspect that they were stolen; and they were not in plain view. *Id.* at 30, 32-34. Watson asserts that the evidence should be suppressed as the fruit of the poisonous tree. *Id.* at 34.

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from

- 4 -

error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted).

"The scope of a lawful search pursuant to a warrant is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Commonwealth v. Taylor*, 771 A.2d 1261, 1265-66 (Pa. 2001) (citations and quotations omitted). "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search and are the fruits of crime, such as stolen property." *Commonwealth v. Gannon*, 454 A.2d 561, 565 (Pa. Super. 1982) (citations and quotations omitted). Further, a warrant is not necessary where evidence comes to an officer's "attention by virtue of being in plain sight." *Commonwealth v. Bowers*, 274 A.2d 546, 547 (Pa. Super. 1970) (citations omitted); *see also Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa. Super. 2012).

The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item. Thus, police executing a valid search warrant may seize items not listed in the warrant if their incriminating nature is immediately apparent.

*Commonwealth v. Harvard*, 64 A.3d 690, 698 (Pa. Super. 2013) (internal citation omitted).

Here, the trial court addressed Watson's claim and determined that it is without merit. *See* Trial Court Opinion, 10/28/13, at 14-17. We adopt the trial court's reasoning regarding this aspect of Watson's appeal, and affirm on its basis. *See id.*; *see also Harvard*, 64 A.3d at 698 (concluding that police officers, executing a valid search warrant, properly seized items that were not listed in the search warrant, but matched the description of items stolen in the robberies under investigation).

In his second claim, Watson contends that the trial court erred in denying his Motion for Severance, as venue was not proper in Dauphin County for crimes that occurred in other counties. Brief for Appellant at 34-36. Watson argues that because his conduct was not "one criminal episode," and only five of the burglaries he was charged with occurred in Dauphin County, venue was improper. *Id.* at 35-36.

"The standard of review for a denial of a motion for change of venue is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Johnson*, 612 A.2d 1382, 1384-85 (Pa. Super. 1992). Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district. *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003). Venue is predominately a procedural matter, generally prescribed by the rules of [the Supreme] Court. *Id.*

Criminal Rule 130(A)(3) governs venue and transfer of criminal proceedings and provides, in relevant part, the following:

**(A) Venue.** All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred…subject, however, to the following exceptions:

\*\*\*

(3) When charges arising from the **same criminal episode** occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

Pa.R.Crim.P. 130 (emphasis added); *see also Commonwealth v. Kohler*, 811 A.2d 1046, 1049 (Pa. Super. 2002) (recognizing that a "condition precedent to the exercise [of jurisdiction] by a single county [] in a case involving multiple offenses in various counties is ... a single criminal episode.") (internal citation and quotations omitted).

A single criminal episode exists "[w]here a number of charges are logically … related and share[] common issues of law and fact[.]" *Kohler*, 811 A.2d at 1050.

In ascertaining whether a number of statutory offenses are logically related to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses…. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds.

*Id.* at 1050-51 (internal quotations omitted).

Here, the fact that the criminal acts occurred over a course of four months in multiple counties does not preclude the acts from constituting a single criminal episode. Relevant evidence of each crime Watson was charged with would also be admissible as relevant evidence of the other charged crimes. Indeed, all of the burglaries took place during morning daylight hours, with the perpetrator gaining access by kicking in a door. The same types of items were stolen during each burglary. Further, eyewitnesses were able to identify Watson and link him to the vehicles used during the crimes. Stolen property identified by the victims was discovered at Watson's residence, and cellular phone records demonstrated that he was near the crime scenes around the time the burglaries occurred. The underlying facts of this case establish a logical relationship between the crimes, and as such, the multiple burglaries constitute a single criminal episode. *See id.* at 1051 (determining that the criminal acts, despite having occurred in various counties over the course of 14 months, amounted to a single criminal episode with "substantial duplication of factual, and/or legal issues presented by the offenses."). Thus, venue was proper in Dauphin County.[4]

---

[4] To the extent Watson argues that the trial court misinterpreted Pa.R.Crim.P. 130, we conclude that such argument is without merit.

Watson also contends that the out-of-county charges should have been severed, as they were improperly joined under Pa.R.Crim.P. 503 and 582. Brief for Appellant at 34, 38-39.

Our standard of review is as follows:

> It is well settled that a motion for severance is addressed to the sound discretion of the trial court, and that the decision reached by the trial court will not be disturbed absent a showing of manifest abuse of discretion…. A better chance of acquittal from a separate trial is not sufficient cause to warrant severance.

***Commonwealth v. Presbury***, 665 A.2d 825, 827-28 (Pa. Super. 1995) (citation omitted).

The trial court addressed Watson's claim and determined that it is without merit. ***See*** Trial Court Opinion, 10/28/13, at 23-25. We adopt the sound reasoning of the trial court, and affirm on this basis, with regard to this issue of Watson's appeal. ***See id.***

In his third claim, Watson argues that the trial court erred in denying his Motion to Exclude the cellphone tower "ping" evidence and accompanying testimony because using that information to locate a cellphone is not generally accepted in the field of cellphone technology and because Glucksman (who provided testimony about the evidence) is not an expert. Brief for Appellant at 40, 44-45. Watson contends that any testimony surrounding the cellphone tower evidence was, by its very nature, expert, as the average layperson knows nothing about the technology. ***Id.*** at 44.

Therefore, Watson claims, Pennsylvania Rule of Evidence 702[5] was not satisfied, and his Motion to Exclude should have been granted. *Id.* at 41-42, 44-47.

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well[-]settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (citations omitted).

The trial court addressed Watson's claim and determined it is without merit. *See* Trial Court Opinion, 10/28/13, at 25-32. We adopt the sound

---

[5] Rule 702, Testimony by Expert Witness, provides the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

reasoning of the trial court regarding this issue of Watson's appeal, and affirm on this basis. ***See id.***

In his final claim, Watson contends that the trial court erred in denying his Motion for Mistrial, as Glucksman's testimony surrounding the "ping" evidence was impermissible expert testimony, was forbidden by a pre-trial order, and resulted in prejudice to Watson's case. Brief for Appellant at 48-50.

> Our standard of review in assessing the denial of a mistrial is as follows: the trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007) (citation omitted).

The trial court addressed Watson's final claim and determined it is without merit. ***See*** Trial Court Opinion, 10/28/13, at 32-34. We adopt the sound and detailed reasoning of the trial court regarding the final issue, and affirm on this basis. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/11/2014</u>

ORIGINAL Circulated 07/21/2014 02:24 PM

J- A18002-14

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : 4163  4167
: NO: 4263, 4267 CR 2010
LAQUINCEY WATSON : (900 MDA 2013)
:

## MEMORANDUM OPINION

Appellant, Laquincey Watson ("Appellant" or "Watson") is appealing this Court's judgment of sentence entered on April 23, 2013. This opinion is written pursuant to Pa.R.A.P. 1925(a). For the reasons set forth below, this Court finds that it properly exercises its discretion with respect to the rulings challenged by Appellant in the instant appeal.

## PROCEDURAL HISTORY

On March 12, 2010, Laquincey Watson was arrested and charged with one count of Criminal Attempt – Burglary[1] at Docket Number 4163 CR 2010. On June 21, 2010, Mr. Watson was arrested and charged with one count of Robbery – Threat Of Immediate Serious Injury,[2] twenty-five (25) counts of Burglary,[3] one count of Receiving Stolen Property,[4] one count of Person Not to Possess a Firearm,[5] one count of Criminal Attempt – Burglary,[6] and one count of Criminal Conspiracy – Burglary[7] at Docket Number 4167 CR 2010. Subsequently, the Commonwealth withdrew elevens charges at

---

[1] 18 Pa.C.S. § 901(a).
[2] 18 Pa.C.S. § 3701(a)(1)(ii).
[3] 18 Pa.C.S. § 3502(a).
[4] 18 Pa.C.S. § 3925(a).
[5] 18 Pa.C.S. §6105(a)(1).
[6] 18 Pa.C.S. § 901(a).
[7] 18 Pa.C.S. § 903(a)(1).

Docket Number 4167 CR 2010 including one count of Criminal Attempt – Burglary, nine (9) counts of Burglary and one count of Criminal Conspiracy – Burglary.[8]

On May 31, 2012, Appellant filed an Omnibus Pre-Trial Motion and an Amended Omnibus Pre-Trial Motion on June 19, 2012.[9] Included were a Motion to Suppress Physical Evidence Seized As A Result of Search Warrants Executed, a Motion to Sever Charges, a Motion for Severance of Charges Or, In The Alternative, Motion For A Bifurcated Trial, a Motion To Exclude Admission Of Cellular Telephone Tower "Ping" Evidence And Accompanying Expert Testimony, a Motion to Exclude Admission of Cellular Telephone Tower "Ping" Evidence And Accompanying Expert Testimony On The Grounds Of Relevancy And That Prejudice Of The Testimony Would Outweigh The Probative Value, and a Motion To Exclude Defendant's Prior Criminal Convictions And Bad Acts That The Commonwealth Intends to Introduce Under 404(B). The Commonwealth filed its response on June 15, 2012. This Court held hearings on Defendant's Motion on June 28, 2012 and September 10, 2012. During the course of both pretrial hearings, this Court disposed of Appellant's Pretrial Motions.

A jury trial was held on September 11, 12, 13 and 14, 2012. Appellant was found guilty on thirteen counts of burglary (Counts 1-8, 10, 12-13, 16-17), one count of receiving stolen property (Count 18) and one count of person not to possess a firearm

---

[8] Counts 20 through 30 at Docket Number 4167 CR 2010 were withdrawn pursuant to Pa.R.Crim.P. 561(a).

[9] The Amended Omnibus Pre-Trial Motion was filed on June 19, 2012 and raised the following issue: Exclude all electronics that are not alleged to have been stolen from one of the addresses charged in the criminal information on the grounds of the relevancy of the evidence, and the prejudicial impact of the evidence outweighing the probative value to the Commonwealth. During the pre-trial hearings this issue was resolved on the record to the effect that the Commonwealth would not introduce evidence regarding any items not confirmed as stolen. *See* N.T. Pretrial, 6/28/13 at 87; N.T. Pretrial, 9/10/12 at 82-83.

2

(Count 19). Appellant was found not guilty on three counts of burglary (Counts 9, 11, and 14). At Docket Number 4163 CR 2010, Mr. Watson pleaded guilty to one count of criminal attempt – burglary.

On December 17, 2012, Appellant was sentenced to the following:

## 4167 CR 2010

- Count 1 – Robbery – incarceration in a state correctional institution for a term of not less than 72 months nor more than 144 months along with costs of prosecution and a fine of $500;
- Count 2 – Burglary - incarceration in a state correctional institution for a term of not less than 60 months nor more than 120 months along with costs of prosecution and a fine of $500, set to run consecutively with Count 1.

## 4163 CR 2010

- Count 3 – Burglary - incarceration in a state correctional institution for a term of not less than 24 months nor more than 48 months along with costs of prosecution and a fine of $200, set to run consecutively with Count 2;
- Counts 4 through 8, 10, 12 through 13, and 16 through 17 – Burglary – at each count incarceration in a state correctional institution for a term of not less than 24 months nor more than 48 months along with costs of prosecution and a fine of $250, with each count to run consecutively;
- Count 18 – Theft by Receiving Stolen Property - incarceration in a state correctional institution for a term of not less than 18 months nor more than 36 months along with costs of prosecution and a fine of $20, set to run consecutively with Count 17;
- Count 19 – Person Not To Possess a Firearm - incarceration in a state correctional institution for a term of not less than 60 months nor more than 120 months along with costs of prosecution and a fine of $250, set to run consecutively with Count 17.

On December 27, 2012, Appellant filed a timely Post-Sentence Motion requesting a modification of sentence to which the Commonwealth responded. This Court held a hearing on Mr. Watson's Motion on March 13, 2013 and on April 23, 2013 issued an

3

Order granting Appellant's Motion and Amended Sentencing Order. The sentences were amended only in the following respects: At docket number 4167 CR 2010 - Counts 3, 4, 5, 6, 7, 8 and 10 were amended to run concurrently with Count 2; the sentence at Count 12 was amended to incarceration at a state correctional facility for a term of not less than 30 months nor more than 60 months set to run consecutively with Count 12; the sentences at Counts 16 and 17 were amended to run concurrently with each other and concurrently with Count 2; the sentence at Count 18 was amended to run consecutively with Count 13; and, the sentence at Count 19 was amended to run consecutively with Count 18. Docket number 4163 CR 2010 remained unchanged and was set to run consecutively to docket 4167 CR 2010.

On May 20, 2013, Mr. Watson filed a timely Notice of Appeal to the Pennsylvania Superior Court. On June 10, 2013, this Court issued an Order directing Appellant to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days, to which the Appellant timely responded. On appeal, Appellant raises the following issues:

1. The trial court erred by denying Appellant's motion to suppress physical evidence and identification of evidence.
2. The trial court erred by denying Appellant's pretrial motion for severance.
3. The trial court erred when it denied Appellant's pretrial motion to exclude Commonwealth's cellular telephone tower "ping" evidence and accompanying expert testimony.
4. The trial court erred when denying Appellant's motions for mistrial after the Commonwealth's witness repeatedly violated a pre-trial order forbidding opinion testimony regarding the cellular phone records.
5. The trial court erred when it denied Appellant's pretrial motion to preclude the Commonwealth from introducing evidence of Appellant's prior bad acts.

4

## FACTUAL BACKGROUND

The Defendant was charged with twenty (20) crimes, primarily burglaries, which took place over the course of approximately four (4) months between November 2009 and March 2010. Mr. Watson was accused of the following: the November 24, 2009 robbery of Pamela Heinbaugh during the burglary of the Stammel residence, owned by her parents, at 634 Chestnut Avenue, Harrisburg, Dauphin County, Pennsylvania; the November 24, 2009 burglary of the Miller residence at 3287 Cape Horn Road, Red Lion, York County, Pennsylvania; the October 27, 2009 burglary of the Marano residence at 2915 Carol Road, York, York County, Pennsylvania; the November 9, 2009 burglary of the Roeder residence at 25 Koser Road, Elizabethtown, Lancaster County, Pennsylvania; the November 18, 2009 burglary of the Shank residence, 38 Hair Road, Newville, Cumberland County, Pennsylvania; the December 21, 2009 burglary of the Shutt residence, 2195 Valley Road, Enola, Cumberland County, Pennsylvania; the January 15, 2010 burglary of the Finkenbinder residence at 330 Yoe Drive, Yoe, York County, Pennsylvania; the January 21, 2010 burglary of the Parker residence, 3506 Hickory Hollow Road, Harrisburg, Dauphin County, Pennsylvania; the January 25, 2010 burglary of the Stailey residence at 130 State Road, Mechanicsburg, Cumberland County, Pennsylvania; the January 28, 2010 burglary of the Stebbins residence at 1932 Harclay Place, Lancaster, Lancaster County, Pennsylvania; the February 1, 2010 burglary of the Boyd residence at 1505 Pelham Road, Harrisburg, Dauphin County, Pennsylvania; the February 1, 2010 burglary of the Lamanna residence at 4713 Bucks Run Lane, Harrisburg, Dauphin County, Pennsylvania; the February 23, 2010 burglary of the Walsh

5

residence at 126 Balfour Drive, Mechanicsburg, Cumberland County, Pennsylvania; the March 2, 2010 burglary of the Heistand residence at 1780 Lambs Gap Road, Mechanicsburg, Cumberland County, Pennsylvania; the March 3, 2010 burglary of the Bortolin residence, 210 Wheaton Street, York, York County, Pennsylvania; the March 3, 2010 burglary of the Kalligonis residence, 2999 Legacy Drive, York, York County, Pennsylvania; theft by receiving stolen property and possession of a firearm (.357 revolver).[10] The robbery and the burglaries took place during daylight hours and usually involved a forced entry into the house by breaking a door. The items stolen were generally household electronics such as flat screen TVs, laptop computers and radios, jewelry, collectible coins and other cash or coins.

On June 28, 2012 and September 10, 2012, hearings were held on Defendant's Omnibus Pretrial Motion and Amended Omnibus Pretrial Motion. At the hearings, the Commonwealth presented the testimony of Korey Leslie, Esquire[11], and the attorney who represented Mr. Watson at his preliminary hearing, Detective James Glucksman "Detective Glucksman" or "Glucksman" of the Lower Paxton Township Police Department, Jessica Sauder and Carolyn Fortney[12]. Appellant did not present testimony at the pretrial hearings.

---

[10] The jury returned a not guilty verdict with respect to the Parker, Stebbins, Walsh and Heistand burglaries.

[11] Attorney Leslie and Carolyn Fortney testified with regard to Defendant's pretrial Petition for Writ of Habeas Corpus which was filed on May 31, 2012 and addressed by this Court during the pretrial hearings along with the other pretrial Motions. This Court's ruling on the Petition has not been asserted as an issue on Appeal; therefore, the issues presented in the Petition will not be addressed in this opinion.

[12] *See* note 9, *supra.*

Testimony during the pretrial hearing and the jury trial established the following facts:

Detective James Glucksman, a former Dauphin County Adult Probation and Parole Officer, has been a police officer with the Lower Paxton Township Police Department for eleven (11) years. (Notes of Testimony, Pretrial, 6/28/12 at 27).[13] Det. Glucksman has been a detective since 2005 with a primary assignment to burglary cases. (N.T. Pretrial, 6/28/12 at 89). Det. Glucksman testified that he has investigated a total of between six hundred (600) and one thousand (1000) burglaries, including serial burglary cases. (Id.)

Detective Glucksman became involved in this case when, on March 5, 2010, he was assigned to investigate an attempted burglary on McIntosh Road in Lower Paxton Township, the third burglary in the township that weekend. (N.T. Pretrial, 6/28/12 at 91). Det. Glucksman determined that a witness had encountered the burglar and based on the information and description was provided, he assembled a photo array for review by the witness/victim which led to the identification of Mr. Watson as a suspect in the attempted burglary. (N.T. Pretrial, 6/28/12 at 91-92).

Det. Glucksman stated that he regularly monitors intelligence information obtained by various law enforcement entities relative to cases he is investigating. (N.T. Pretrial, 6/28/12 at 92-93). Based on the intelligence information gathered, Detective Glucksman began recognizing a specific pattern related to several daylight burglaries in

---

[13] Hereinafter "N.T. Pretrial."

7

Lower Paxton Township and other surrounding areas that fit a pattern of burglaries for which Mr. Watson was a suspect and one in Adams County for which he was arrested. (Id.) The *modus operendi* which Glucksman described involved a door kicked in to gain entry during daylight hours, and the stealing of flat screen TVs, jewelry, small electronics, coins and Bose radios. (N.T. Pretrial, 6/28/12 at 91, 92-93). Based on a check of Mr. Watson's criminal background, Det. Glucksman obtained information about a burglary conviction in the state of Georgia. (N.T. Pretrial, 6/28/12 at 93; 121). Based on the evidence uncovered in his investigation of Appellant, Detective Glucksman filed a criminal complaint and obtained a warrant for Mr. Watson's arrest which took place on March 12, 2010. (N.T. Pretrial, 6/28/12 at 94).

Det. Glucksman, on March 15, 2010, obtained a search warrant for the purpose of search Appellant's residence located at 413 Walnut Street, 3rd Floor, Harrisburg, Pennsylvania. (Id.) He explained that he was looking for sneakers that had a tread pattern consistent with marks recovered from the door at the McIntosh Road burglary scene. (N.T. Pretrial, 6/28/12 at 95-96). Det. Glucksman researched the sneaker tread imprint left on the door to ascertain what type of shoe produced the imprint. (Id.) The other items Glucksman was searching for had been reported taken in two other reported burglaries which occurred the same weekend, in Lower Paxton Township, within a mile of the McIntosh Road burglary. (N.T. Pretrial, 6/28/12 at 97). Additionally, Detective Glucksman was looking for documentation pertaining to the use of a rental car because he learned that the truck Watson allegedly used in the Adams County burglary had been returned to the owner, Angela Greene, was no longer being

8

used by Watson. Ms. Green had provided information that Watson had been using a rental car. (N.T. Pretrial, 6/28/12 at 96).

To execute the search warrant, Detective Glucksman arrived at 413 Walnut Street with Officer Sheldon Marshall and Corporal Witmer of the Lower Paxton Police Department, and proceeded to photograph the apartment to document the overall conditions when the police arrived and to document the items found and seized. (N.T. Pretrial, 6/28/12 at 94; 97-98). The specific items photographed were sneakers, cameras, jewelry, Bose radios and a western-style holster that did not contain a gun. (N.T. Pretrial, 6/28/12 at 98). Glucksman also photographed coins which he described as unique because they appeared to be a type which would be part of a coin collection. (N.T. Pretrial, 6/28/12 at 102). The holster was found under a bed where Glucksman was looking for the sneakers. (N.T. Pretrial, 6/28/12 at 98; 126; 131-133). He also saw two TVs in the apartment that were connected to an electrical outlet in the usual manner for viewing. (N.T. Pretrial, 6/28/12 at 108).

While conducting the search, Detective Glucksman seized two pairs of sneakers that matched the tread pattern found on the door at the McIntosh Road burglary. (N.T. Pretrial, 6/28/12 at 108). The additional items he found notable during the search, such as the holster, cameras jewelry, coins and radios, were not seized, but were photographed and certain items were placed into a brown paper bag that he left behind in the apartment. (N.T. Pretrial, 6/28/12 at 101-103; 104-107).

9

On March 22, 2010, an anonymous call was received to the Lower Paxton Township tip line providing information about Mr. Watson's girlfriend at the time, Latoya Craighead. The information provided on the tip line was that Ms. Craighead had taken Appellant's property out of his apartment and had been selling items on Facebook. (N.T. Pretrial, 6/28/12 at 103, 109). Glucksman stated that some items referenced in the call matched property taken during a recent Susquehanna Township.[14] (N.T. Pretrial, 6/28/12 at 109). Detective Glucksman made contact with Ms. Craighead at her apartment, and found that she was in possession of the paper bag filled with the items he previously had photographed at Appellant's apartment during the execution of the search warrant. (N.T. Pretrial, 6/28/12 at 103-104; 109, 111).

Ms. Craighead provided Detective Glucksman with information about Appellant including the nature and length of her relationship with him, the vehicles she let him use, and the details of how she, along with other friends, had removed Mr. Watson's property from his apartment. (N.T. Pretrial, 6/28/12 at 109-110). Detective Glucksman also observed one of the TVs, a 47" Vizio, that had been in Appellant's apartment, lying in a hallway. Ms. Craighead told him that she was trying to sell it. (N.T. Pretrial, 6/28/12 at 110-111). Detective Glucksman noted that the Vizio did not have a label with a serial number attached to the unit. (N.T. Pretrial, 6/28/12 at 112-113). Detective Glucksman also observed a Bose Wave radio that had been photographed in Appellant's apartment that Ms. Craighead verified that she had removed. (N.T. Pretrial, 6/28/12 at 114-115). While still at Ms. Craighead's apartment, Glucksman called Bose

---

[14] Susquehanna Township is a municipality which borders Lower Paxton Township.

with the serial number from the radio and confirmed that it had been stolen during a burglary in Susquehanna Township. (N.T. Pretrial, 6/28/12 at 115). Eventually, Ms. Craighead consented to the seizure of the suspected stolen property that she had removed from Appellant's apartment or had received from him as a gift. (N.T. Pretrial, 6/28/12 at 115-116).

Detective Glucksman seized the following property from Ms. Craighead's apartment that he had previously observed during the search: a Bose Wave radio, the leather western-style holster, four cameras, the Vizio television, and the 1986 coin in a soft plastic sleeve. (N.T. Pretrial, 6/28/12 at 116-119).

On cross examination, Detective Glucksman conceded that the search warrant listed sneakers, rental car bills, rental car documentation, sterling silver forks, spoons or serving trays and antique women's jewelry, but no electronics. (N.T. Pretrial, 6/28/12 at 122). Glucksman identified a photograph taken during the search which depicted the four cameras, two coins he described as observing and placing into a paper bag. (N.T. Pretrial, 6/28/12 at 126-127; Defense Pretrial Exhibit 1). Also included in the picture were a business card, a bracelet and tobacco rolling papers. (Id.) Detective Glucksman testified that he got the two coins out of a dresser drawer next to the location where items were placed for photographing. (N.T. Pretrial, 6/28/12 at 127-128). Glucksman also photographed a Bose radio remote control and an iPod that had been lying on top of a dresser, but he did not manipulate them. (N.T. Pretrial, 6/28/12 at 128-129). Additionally, Det. Glucksman testified that he manipulated a Dell laptop computer to photograph the item as well as the serial number. (N.T. Pretrial, 6/28/12 at 130-131).

11

Detective Glucksman conceded handling the four cameras and also pulling the holster out from under the bed, photographing and bagging it. (N.T. Pretrial, 6/28/12 at 131-133).

## DISCUSSION

When the denial of a suppression motion is reviewed, the following legal standard is applied:

> Generally, our standard of review when addressing a challenge to a trial court's denial of suppression is whether the factual findings are supported by the record and whether the legal conclusions drawn from these facts are correct. When reviewing the rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Commonwealth v. Harvard, 64 A.3d 690, 695 (Pa. Super. 2013) citing Commonwealth v. Hawkins, 45 A.3d 1123, 1126 (Pa.Super.2012), appeal denied, —— Pa. —— ——, 53 A.3d 756 (2012).

In his pretrial Motion to Suppress Evidence, Mr. Watson argued to this Court that the physical evidence seized pursuant to the search warrant executed by Detective Glucksman should be suppressed because the search exceeded the scope of the search warrant. Appellant contends that Det. Glucksman exceeded his authority under the search warrant in violation of Mr. Watson's rights under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Appellant claims that the violation occurred when Detective Glucksman "manipulated and photographed holsters, TVs, cameras, computers, radios, coins, and various electronic equipment, none of which were contained within the search warrant." (See

12

Defendant's Omnibus Pre-Trial Motion, 5/31/12). Appellant also asserted that any identification evidence obtained from the seized physical evidence, such as identification by serial numbers, should also be suppressed as "fruit of the poisonous tree."

In opposition to the Suppression Motion the Commonwealth argued that the actions of the police in this matter did not amount to a seizure to implicate the protections provided by the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. The Commonwealth contends that principles espoused in the case of U.S. v. Hicks[15] as applied to the totality of the instant facts scenario results in a finding that the manipulating and photographing items found in Appellant's apartment not listed on the search warrant does not amount to a seizure. The Commonwealth pointed to the fact that the police were in possession of a search warrant in a case where they were looking for stolen property and some of the items listed on the warrant would hypothetically have been found in the areas where the photographed items were observed.

Further applying Hicks, the Commonwealth also argued, in the alternative, that if this Court were to find that the police actions amounted to a search and seizure, the police's actions were justified under the plain view exception to the necessity of obtaining a search warrant.

Additionally, the Commonwealth presented another alternative argument to justify the actions taken by the police with respect to the items that were photographed

---

[15] 480 U.S. 321 (1987).

and bagged by asserting that the inevitable discovery doctrine applies pursuant to Commonwealth v. Bailey, 986 A.2d 860 (Pa. Super. 2009). The Commonwealth contends that the challenged evidence would eventually have been lawfully seized by virtue of the anonymous call about Latoya Craighead's selling of electronics over the internet and the eventual contact made with Craighead that lead to her consent to the seizure of the suspected stolen items. This Court denied Appellant's Suppression Motion on the record at the September 10, 2012 pretrial hearing. (N.T. Pretrial, 9/10/13 at 80).

Upon review of the respective positions of the Commonwealth and Defendant, including the alternative arguments posited, the testimony presented at the pretrial hearings, and the briefs submitted by counsel, this Court finds that the actions of manipulating and photographing items found by Officer Glucksman while searching Watson's apartment were lawful and justified by the plain view doctrine. According to Pennsylvania caselaw:

> Generally, a warrant stating probable cause is required before a police officer may search for or seize evidence. However, [t]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant[.] The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item. Harvard, 64 A.3d 690, 698 (Pa. Super. Ct. 2013) citing Commonwealth v. Anderson, 40 A.3d 1245, 1248 (Pa.Super. 2012) (citations omitted), appeal denied, —— Pa. ——, 51 A.3d 837 (2012). Thus, police executing a valid search warrant may seize items not listed in the warrant if their incriminating nature is immediately apparent. Id.

14

The search warrant was offered into evidence during the pretrial hearing. (*See* N.T. Pretrial, 6/28/12 at 95, 121; Pretrial Commonwealth Exh. 2). The warrant specifically described the premises to be searched as "[t]he apartment of Laquincey Watson, located at 413 Walnut Street, in the Third floor/Apt. #3, Harrisburg, PA and identified the following as items to be searched for and seized:

> Adidas SS original or Super Star 2 sneakers, or sneakers appearing to match recovered tread pattern, any rental car bills or documentation associated with rental cars since December 2009, sterling silver forks, spoons or serving tray, antique women's jewelry. (Id.)

Appellant was a suspect in a daytime burglary and had been identified from a photo array. Reviewing the affidavit of probable cause submitted in support of his application for a search warrant, we note that Detective Glucksman was also investigating two other residential daylight burglaries committed within a few days of the McIntosh Road burglary, that had occurred within a very close geographical proximity and exhibited a similar *modus operendi.* (*See* Commonwealth Exh. 2). The investigation was occurring at a time when Appellant had already been arrested for the McIntosh road burglary and was a suspect in multiple other daylight burglaries based upon the similar *modus operendi* employed in the burglaries. At the time of the search, Detective Glucksman also had knowledge of an Adams County burglary charge and arrests in Georgia for Felony Theft, Theft, Receiving Stolen Property and Burglary between 1996 and 1998. Upon review of the information presented in the affidavit of probable cause, it is abundantly clear that Detective Glucksman was in Appellant's

15

apartment based on a valid search warrant. Therefore, the first prong of the "Plain View" test has been satisfied.

Next, the testimony by Detective Glucksman supports a finding that the items were not obscured and could be seen from the locations in the apartment which were being lawfully searched. The evidence that Appellant is seeking to suppress, the cameras, coins, holster and jewelry were all found in plain sight or in a location where it is reasonable that an officer would look to find the items specifically listed in the valid search warrant. For example, small items like antique jewelry, silver forks or spoons or the rental documents would, from a commonsense perspective, be found on a dresser or in a dresser drawer where the collectible coins were found. Further, the warrant included sneakers which are commonly found under a bed, which is the location where the holster was found. Acting with the knowledge that Appellant was also charged with a firearms offense, Glucksman removed the holster from the location, photographed and bagged it. Therefore we find that the second and fourth prongs of the "Plain View" test have been satisfied.

With respect to the third prong of the "Plain View" test, Detective Glucksman's testimony regarding what he already knew about Appellant, his past and present criminal history, coupled with his extensive police work experience investigating burglaries support his determination that the additional items searched, photographed and bagged were of incriminating nature under the circumstance.

16

Of significance in this case, as compared to other cases that have applied the plain view doctrine, is the fact that Detective Glucksman did not take the additional items with him. He merely seized two pairs of sneakers. The items that Appellant sought to suppress were not seized until a week later based on a visit to Appellant's girlfriend as a result of an anonymous tip. More importantly, consent was given to seize the items found at Ms. Craighead's apartment, including the bagged items she took from Appellant's apartment for him.

Appellant's second statement of error on appeal challenges this Court's denial of his pretrial Motion for Severance. In his pretrial motion, Appellant argues that Dauphin County is an improper venue to try the offenses charged that stem from incidents in other counties. Appellant contends that for Dauphin County to be the proper venue to try all the burglaries before the court in this case, the charges must arise from a single criminal episode which does not exist in the instant matter. Appellant states that pursuant to Rule of Criminal Procedure 130[16] governing venue, the general rule is that criminal proceedings must be brought before the issuing authority for the magisterial

---

[16] (A) Venue. All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred or before an issuing authority on temporary assignment to serve such magisterial district, subject, however, to the following exceptions:

(1) A criminal proceeding may be brought before any issuing authority of any magisterial district within the judicial district whenever the particular place within the judicial district in which the offense is alleged to have occurred is unknown.

(2) When charges arising from the same criminal episode occur in more than one magisterial district within the same judicial district, the criminal proceeding on all the charges should be brought before one issuing authority in any one of the magisterial districts in which the charges arising from the same criminal episode occurred.

(3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred. (Subsections (A)(4), (5) and (6) omitted). Pa. R. Crim. P 130.

district in which the offense is alleged to have occurred. He argues that, in this case, the Commonwealth has not satisfied one of the exceptions to the rule provided in Rule 130(A)(2) or (3) which allows the charges to brought before the issuing authority in a magisterial district within any judicial district in which the charges arise when the charges arose from one criminal episode. In support of his position, Appellant cited the case of Commonwealth v. Woodrow, 743 A.2d 458, 1999 Pa. Super. 294 (1999) wherein a Court, when ruling upon an ineffective assistance of counsel claim made pursuant to the Post-Conviction Relief Act, found that seventeen residential burglaries in three counties within eighteen days was not a single criminal episode. It is notable that in Woodrow, the issue was whether the defendant's attorney was ineffective because he did not file a Motion to Dismiss the charges in a second trial, in a separate county, as the principals of double jeopardy and the compulsory joinder rule in 18 Pa.C.S. § 110 applied, as contrasted with the instant severance issue. Appellant has also asserted that to permit a jury to hear the evidence on all of the crimes charged would be unduly prejudicial as it would be impossible for the jurors to look at each incident individually and not cumulate evidence and apply it to each burglary.

Pretrial, the Commonwealth's position was that the objection to venue was procedurally late as it should have been lodged at the preliminary hearing stage. Additionally, the Commonwealth argued that, under the Pennsylvania Rules of Criminal Procedure 563[17] and 582,[18] the burglaries were properly joined because they share a

---

[17] (A) Two or more offenses, of any grade, may be charged in the same information if:
   (1) the evidence of each of the offenses would be admissible in a separate trial for the other and is
      capable of separation by the jury so that there is no danger of confusion; or

18

common plan or scheme and *modus operandi* and further, the evidence of each of the present offenses would be admissible in a separate trial for the other pursuant to an analysis under Pennsylvania Rule of Evidence 404(b). The Commonwealth contends that the evidence would be admissible to show identity, too. The Commonwealth cited the case of Commonwealth v. Janda, 14 A.3d 147 (Pa. 2011) as an illustration of why Appellant's burglaries were properly joined for trial and why the separate informations were properly joined, as well.

As stated by the Supreme Court in Commonwealth v. Bethea,[19] the concepts of venue and jurisdiction are commonly confused and, therefore, the Court took the opportunity to clarify the principles as follows:

> Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. McGinley v. Scott, 401 Pa. 310, 164 A.2d 424 (Pa.1960). Jurisdiction is a matter of substantive law. Id. at 428; 42 Pa.C.S. § 931(a) (defining the unlimited original jurisdiction of the courts of common pleas). Appellee was charged with violations pursuant to the Crimes Code. **Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. See 18 Pa.C.S. § 102. Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code. Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system).**
>
> Venue relates to the right of a party to have the controversy brought and heard in a particular judicial district. McGinley, 164 A.2d at 427–28. Venue is predominately a procedural matter, generally prescribed by rules of this Court. Id. at 429; 42 Pa.C.S. § 931(c). Venue assumes the existence of

(2) the offenses charged are based on the same act or transaction.

(B) There shall be a separate count for each offense charged. Pa. R. Crim. P. 563.

[18] The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together. Pa. R. Crim. P. 583.

[19] 574 Pa. 100, 828 A.2d 1066 (2003).

jurisdiction. 42 Pa.C.S. § 931(b) (referencing rules for change of venue in cases within the jurisdiction of courts of common pleas); Pa.R.Crim.P. 584 (relating to the procedure for a change of venue amongst courts of common pleas for the trial of criminal actions).

Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists. 92A C.J.S., Venue § 2. The terms are often used interchangeably because they must exist simultaneously in order for a court to properly exercise its power to resolve a particular controversy.

Although each court of common pleas within this Commonwealth possesses the same subject matter jurisdiction to resolve cases arising under the Pennsylvania Crimes Code, that jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances. Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction. Venue in a criminal action properly belongs in the place where the crime occurred. Commonwealth v. Mulholland, 549 Pa. 634, 702 A.2d 1027 (Pa. 1997).

Commonwealth v. Bethea, 574 Pa. 100, 113-14, 828 A.2d 1066, 1074-75

(2003)(emphasis added).

Appellant contends that this Court lacked jurisidiction to proceed on the charges which were brought on criminal incidents that occurred outside of Dauphin County, therefore, he continues, Dauphin County is not the proper venue for those charges to be heard. As stated above, the basis of Appellant's position is that the multiple burglaries committed were not a single criminal episode therefore no exception to the Rule 130 venue requirements has been satisfied. However, we find that Appellant is confusing jurisdiction and venue as this Court clearly has subject matter jurisdiction as the crimes charged herein arise from violations of the Pennsylvania Crimes Code.

20

As explained in <u>Bethea,</u> venue is a procedural matter which is addressed by the Court Rules. Upon examination of Rule 130, we find that if an argument could be made that the charges stemming from incidents in other counties are not part of a single criminal episode, then such an objection should have been made prior to the preliminary hearing pursuant to Pa.R.Crim.P. 134(A).[20] Additionally, when an objection is presented to the Court under Rule 134, a party is claiming that the magisterial district in which the charges were brought was improper. The Rules are found in Part C. "Issuing Authorities, Venue, Location and Recording of Proceedings. A reading of Rules 130 and 134 make clear that they apply only to challenges to venue within the same county unless the Commonwealth establishes that the charges stem from one criminal episode.

To clarify this issue we consult the explanatory comment to Rule 130 which provides:[21]

> Comment: When charges arising from a single criminal episode occur in more than one judicial district, the magisterial district in which the proceeding on all the charges is brought, i.e., the one with venue, may be any one of the magisterial districts in which the charges occurred.
>
> *****
>
> Similarly, when charges arising from a single criminal episode occur in more than one magisterial district within one judicial district, the magisterial district in which the proceeding on all the charges is brought,

---

[20] (A) Objections to venue between magisterial districts shall be raised in the court of common pleas of the judicial district in which the proceeding has been brought, before completion of the preliminary hearing in a court case or before completion of the summary trial when a summary offense is charged, or such objections shall be deemed to have been waived. Pa. R. Crim. P 134.

[21] We may consult the explanatory comments of the committee that worked on a rule. <u>Commonwealth v. Far,</u> 616 Pa. 149, 154-55, 46 A.3d 709, 713 (2012).

21

i.e., the one with venue, may be any one of the magisterial districts in which the charges occurred.

The decision of in which magisterial district in paragraph (A)(2) or in which judicial district in paragraph (A)(3) the proceedings are to be brought is to be made initially by the law enforcement officers or attorneys for the Commonwealth. In making the decision, the law enforcement officers or attorneys for the Commonwealth must consider in which magisterial district under paragraph (A)(2) or in which judicial district under paragraph (A)(3) it would be in the interests of justice to have the case proceed, based upon the convenience of the defendant and the witnesses, and the prompt administration of justice.

The language of Rule 134 "Objections to Venue," explicitly addresses "[o]bjections to venue **between magisterial districts**, not as between judicial districts unless the issue is one of the transfer of proceedings in a court case pursuant to Rule 134(B). (Emphasis added). Even if we were to view this issue as being governed by Rule 130, review of the circumstances of the many burglaries, reveals sufficient duplication of factual and legal issues to find that the out of county charges tried in Dauphin County were a single criminal episode to qualify as under the Rule 130(A)(3).

However, upon closer consideration of the issue before the Court, we believe that Appellant is attempting to make the argument that venue is improper because this Court does not have subject matter jurisdiction; therefore, does not have venue as "venue can only be proper where jurisdiction already exists.[22]" This claim also fails. As stated above, there are no territorial limits on the subject matter jurisdiction of the Courts of Common Pleas with respect to violations arising under the Crimes Code. *See* Bethea, *supra.*; 18 Pa.C.S. § 102.

---

[22] Bethea, 828 A.2d at 1075 *citing* 92A C.J.S., Venue § 2.

The other aspect of Appellant's argument regarding the severance of the out of county charges in this matter is that the offenses were improperly joined in the criminal information under Rule 563. The decision to consolidate separate indictments for trial rests with the trial court, and this court will reverse only for a manifest abuse of that discretion. The Pennsylvania Supreme Court has explained the arguments for and against consolidation as follows:

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) The defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find. In determining whether the trial court abused its discretion, this Court must "weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy.

Commonwealth v. Janda, 14 A.3d 147, 155 (Pa. Super. 2011)(internal citations and quotation marks omitted).

In addition to considering argument at the pretrial hearings, this Court also reviewed briefs presented by counsel on this issue. Upon careful consideration of this issue, Appellant's Motion for Severance was denied. (N.T. Pretrial, 9/10/12 at 89). For the following reasons, this Court finds that no abuse of discretion occurred in making this ruling and that the cases brought against Appellant were properly joined.

The test applied by a Court in the face of a request for severance is:

23

Where the defendant moves to sever offenses not based on the same act or transaction...the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses. Commonwealth v. Dozzo, 991 A.2d 898, 902 (Pa. Super. 2010) *citing* Commonwealth v. Collins, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997) *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998).

To satisfy the first prong of the test, a Court must evaluate whether evidence of other crimes is admissible to demonstrate motive, intent, absence of mistake or accident, a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, the identity of the person charged with the commission of the crime on trial, or, the evidence is part of the history of the case and forms part of the natural development of the facts. Dozzo, 991 A.2d 898 at 902.

In the instant case, the burglaries took place over an approximately six month period within abutting Central Pennsylvania counties. Relevant evidence of each crime would be admissible as relevant evidence of the other charged crimes. The burglaries, as well as the Heinbaugh robbery and Valenti attempted robbery, took place at residences, during morning daylight hours in which the perpetrator gained access by kicking in a door. The same types of items were stolen during each: small electronics, TVs, jewelry and coins. In some of the incidents, eyewitnesses identified Appellant or an individual fitting the physical description of Appellant. Additional testimony was presented to link Appellant to vehicles used by the burglar to which he had access and permission to use. Stolen property identified by victims was found at Appellant's

24

girlfriend's apartment and had been observed by police a week prior. The cellar telephone record data for Appellant's cellular phone showed that the phone was used near the crime scenes at roughly the time when it took place. All of these factors were weighed by this Court in its determination that the evidence each of the offenses would be admissible in a separate trial for the other to show common scheme or plan, identity and therefore would be probative.

With respect to considering any potential prejudice, this Court finds that the jury was capable of separation of the individual crimes because the victims and witnesses for each were different and presented in that way during the trial. Further, Commonwealth testimony on the cellular phone data was presented separately by date and location of each incident. Finally, it is clear that the jury appropriately received and parsed the evidence as it rendered guilty and not guilty verdicts at the end of the trial.[23] In this Court's weighing of probative value of the common evidence, the possible prejudicial value of permitting the joinder of informations and trials of the individual offenses as against interests of judicial economy, it properly exercised its discretion by denying Appellant's Motion for Severance.

Appellant's third and fourth issues raised on appeal both assert claims of error with respect to the admission of evidence relating to what it terms as cellular telephone "ping" evidence. First, Appellant contends that this Court erred by denying its pretrial motion to exclude such evidence and accompanying expert testimony. Appellant also claims that this Court erred by denying his motions for mistrial when a Commonwealth

---

[23] See fn. 10, *supra.*

witness "repeatedly violated a pretrial order forbidding opinion testimony regarding the cellular phone records."

Appellant's pretrial motion to have the cellular phone records evidence excluded from admission at trial is premised upon the argument that this type of evidence has not received general acceptance within the relevant scientific community as required by Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). He argues that pursuant to Rule of Evidence 703, the facts that an expert witness bases an opinion upon must be of a type reasonably relied upon by experts in the particular field, and the type of cellular phone evidence the Commonwealth planned to present at trial does not meet the Frye requirements for admissibility; therefore, it should have been excluded. Appellant also argued that to allow such evidence to be presented to a jury without the benefit of expert testimony to testify to the proximity of the cell phone to the cell tower would be more prejudicial than probative in violation of Rule of Evidence 403.

The Commonwealth responded to the pretrial motion by denying that cellular phone tower evidence has not received general acceptance in the relevant scientific community. Additionally, the Commonwealth argued that the evidence it planned to present is fact testimony, not expert testimony, about cell phone records to show when Mr. Watson's cell phone was used and which cell phone tower was utilized for the service, which testimony would not constitute an opinion. Based on this assertion, the Commonwealth argued that Frye is not implicated with respect to this testimony.

26

Pennsylvania's appellate Courts have explained the purpose of a Motion In Limine as follows:

> A motion in limine is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A motion in limine differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion in limine precludes evidence that was constitutionally obtained but which is prejudicial to the moving party. Commonwealth v. Reese, 31 A.3d 708, 715-16 (Pa. Super. Ct. 2011) *citing* Commonwealth v. King, 456 Pa.Super. 72, 689 A.2d 918, 921 (1997) (internal citations and quotation marks omitted). Generally, a trial court's decision to grant or deny a motion in limine is subject to an evidentiary abuse of discretion standard of review. Id.

Pennsylvania Courts apply the abuse of discretion standard to a Court's determination of the admissibility of expert scientific testimony. Grady v. Frito-Lay, Inc., 576 Pa. 546, 839 A.2d 1038 (2003). The test that a court must apply in ruling upon the admissibility of expert scientific testimony was announced in Frye v. United States, 293 F. 1013 (D.C.Cir.1923)[24] and requires that "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community." Grady v. Frito-Lay, Inc., 839 A.2d at 1043-44 (2003) *citing* Commonwealth v. Blasioli, 552 Pa. 149, 713 A.2d 1117, 1119 (1998). In Grady v.

---

[24] The *Frye* test comes from the following passage in the *Frye* opinion:
Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general* acceptance in the particular field in which it belongs. *Frye,* 293 F. at 1014 (emphasis added). Grady v. Frito-Lay, Inc., 576 Pa. 546, 573, 839 A.2d 1038, 1054 (2003).

27

Frito-Lay, Inc., the Pennsylvania Supreme Court clearly emphasized that the Frye test continues to be the applicable test in determining the admissibility of expert scientific testimony.

As part of the pretrial proceedings in this matter, this Court held a Frye hearing to resolve Appellant's Motion and permitted counsel to present argument to address Appellant's position that the cellular phone historical data evidence is novel scientific evidence that does not pass the Frye test for admissibility. (N.T. Pretrial, 9/10/12 at 14-71).

The Commonwealth presented the testimony of Jessica Sauder ("Sauder"), a Senior Radio Frequency Engineer for cellular phone provider to Appellant, T-Mobile. (N.T. Pretrial, 9/10/12 at 14-15). She testified to having an associate's degree in specialized electronics which she has applied during her employment with T-Mobile cellular phone service provider for twelve (12) years. (N.T. Pretrial, 9/10/12 at 15-16). Ms. Sauder explained that her employment responsibilities for T-Mobile include managing projects to upgrade cell tower systems, improving quality of service and helping design new locations for cell towers throughout Pennsylvania. (N.T. Pretrial, 9/10/12 at 15-16). She indicated that along with her "hands-on" work experience, she has received additional training by T-Mobile during her twelve year employment. (N.T. Pretrial, 9/10/12 at 27). In carrying out her work duties, she is responsible for the Central Pennsylvania and Philadelphia markets and that she has built or designed ninety percent (90%) of the cell towers in Central Pennsylvania and actually visited ninety-five percent (95%). (N.T. Pretrial, 9/10/12 at 28; 45).

28

Ms. Sauder indicated that in addition to testifying during multiple zoning hearings relating to the location and construction of cell towers, she has also testified, as an expert, in four trials regarding calls made on a particular cell phone, where the phone would have been during the call, how cell phones related to each other and how cell towers "hand off" a call to another tower. (N.T. Pretrial, 9/10/12 at 16-20). Ms. Sauder explained in detail what happens technologically when a cell phone call is placed and the cell tower's function in that process. (N.T. Pretrial, 9/10/12 at 20-27). Appellant's counsel stated on the record that he had no objection to Ms. Sauder being tendered as an expert in cell phone technology. (N.T. Pretrial, 9/10/12 at 27).

During her testimony, Ms. Sauder explained what data is recorded on historical cell phone records which are kept in accordance with standard T-Mobile business operations: date and time that each phone call commenced and terminated, the phone numbers utilized and the cell towers used at the beginning and ending of each call and what cell tower was used. (N.T. Pretrial, 9/10/12 at 30-32). Ms. Sauder also testified that because of her work experience, she can look at the codes provided on the historical cell phone records and tell you the location of a cell phone tower that was utilized by the cell phone during a particular call and the general geographic area. She conceded that from these types of records she could not tell you the precise location where the call was placed. (N.T. Pretrial, 9/10/12 at 40-42). Ms. Sauder stated that the technology of cell phones utilizing cell towers to function, the recording of a call by a cell tower and utilizing the closest tower providing the strongest signal has been the technology for approximately twenty (20) years. (N.T. Pretrial, 9/10/12 at 30 – 33).

29

She explained that factors that go into the design of a cell tower are the location, such as urban, suburban or rural, will determine the amount of towers in a geographic location, as well as the height of a tower and the signal strength. (N.T. Pretrial, 9/10/12 at 30 – 37). In rural areas the towers may be three to four miles apart whereas in an urban setting you may find a tower every half mile. (N.T. Pretrial, 9/10/12 at 36-37). Ms. Sauder testified that the technology which she explained is generally accepted in the engineering cell telephone technology community. (N.T. Pretrial, 9/10/12 at 32).

During argument, Appellant's counsel clarified for this Court that the evidence he wanted to be excluded was the expert testimony relative to where any phone was located at a time when a call was placed. (N.T. Pretrial, 9/10/12 at 66-67). Of import to this issue is the representation to this Court by the Commonwealth that it did not intend to call Ms. Sauder to render an expert opinion as to the exact location of a person because a cell phone call was made at a certain time or date, and utilizing a particular cell tower because it was the closest cell tower. (N.T. Pretrial, 9/10/12 at 67-71). The Commonwealth stated that it planned to have Ms. Sauder testify to essentially the same facts presented at the pretrial hearing, and, more specifically, the technological functions of the cellular phones and towers. The Commonwealth represented that it would present Detective Glucksman to testify regarding his investigation of Watson's cellular phone records in relation to the times and dates of each burglary and what cell towers were hit during the calls. (N.T. Pretrial, 9/10/12 at 68-71).

After considering all testimony and argument, this Court ruled that the cellular telephone technology to which Ms. Sauder testified was not "novel" science which should be excluded under the Frye standard. (N.T. Pretrial, 9/10/12 at 71). The Supreme has stated that "Frye is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving novel science. What constitutes novel scientific evidence has historically been decided on a case-by-case basis, and there is some fluidity in the analysis; indeed, science deemed novel at the outset may lose its novelty and become generally accepted in the scientific community at a later date, or the strength of the proponent's proffer may affect the Frye determination." Commonwealth v. Dengler, 586 Pa. 54, 69-70, 890 A.2d 372, 382 (2005) *citing* Commonwealth v. Delbridge, 580 Pa. 68, 859 A.2d 1254, 1260 (2004) (plurality opinion); *See also* Pa.R.E. 702 and Grady, 839 A.2d at 1044.

Review of the record clearly reveals that Ms. Sauder, with her ample education and experience, credibly confirmed that cellular telephone technology has been the same for at least 20 years. There was nothing presented in the testimony to dispute that the functioning of the cell phone in relation to the cell tower and the resulting data recorded by T-Mobile is novel in the cellular service provider community or the electronics community generally. As this Court determined that Detective Glucksman was not going to testify as expert or render an opinion about the precise location of Appellant or his cell phone when calls were made, he is merely a fact witness to which Rule of Evidence 702 would not apply. Therefore, this Court properly exercised its

31

discretion in denying Appellant's Motion and admitting the evidence Appellant sought to exclude.

Next, Appellant contends that this Court erred in denying his Motions for Mistrial when the Commonwealth's witness "repeatedly violated a pre-trial order forbidding opinion testimony regarding cellular phone records." Appellant's counsel made Motions for Mistrial to this Court at different points in the trial arguing that Detective Glucksman was testifying to a route of travel and/or placement of Watson's cellphone at a particular location in relation to the cell tower that was recorded as being utilized during a call. (N.T. Trial, 9/12/12 a.m. at 86; N.T. Trial, 9/12/12 p.m. at 100-101; N.T. Trial, 9/13/12 at 104). The Commonwealth countered these Motions by stating that common sense would guide the jurors regarding where a phone would be based on the record data and further, the witness would be cautioned not to testify to any placement of a phone in relation to a cell tower or any opinions as to the location of Appellant. (N.T. Trial, 9/12/12 a.m. at 87 – 88) The Commonwealth also argued that the prejudicial impact of the testimony is minimal and at some points during cross examination, Appellant's counsel questioned Detective Glucksman on route of travel facts.

Very recently, the Pennsylvania Supreme Court applied the long-standing standard in review of court's denial of a motion for mistrial:

> A trial court is required to grant a mistrial only where the alleged
> prejudicial event may reasonably be said to have deprived the defendant
> of a fair and impartial trial. It is well-settled that the review of a trial
> court's denial of a motion for a mistrial is limited to determining whether
> the trial court abused its discretion. An abuse of discretion is not merely
> an error of judgment, but if in reaching a conclusion the law is overridden

32

or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice. Commonwealth v. Fortenbaugh, 69 A.3d 191, 193 (Pa. 2013) *citing* Commonwealth v. Brinkley, 505 Pa. 442, 480 A.2d 980, 986 (1984) and Commonwealth v. Chamberlain, 612 Pa. 107, 30 A.3d 381 (2011) (internal quotation marks and citations omitted).

Review of the trial transcripts in this case reveals that Appellant's claim of error is without merit. The allegedly objectionable testimony only occurred a few time during a trial that lasted four days. Each time Appellant's counsel objected and motioned for a mistrial, this Court provided ample opportunity for argument and, despite concluding that the evidence would have minimal prejudice and such that Appellant would still have a fair and impartial trial, responded by directing the Commonwealth to caution its witness to refrain from presenting any route of travel evidence or opinion as to the placement of Watson's phone. (N.T. Trial, 9/12/12 a.m. at 88; N.T. Trial, 9/12/12 p.m. at 100-101). The Court also instructed the witness directly not to state that that hitting a cell phone tower places the cell phone in a particular place. Further, this Court took the additional precautionary step of instructing the jury ignore any testimony by Detective Glucksman that used the term "placed" in reference to the cell phone, that he does not possess the expertise to render that type of testimony, and that the jury should only consider what cell tower the cell phone hit or struck at a given time while a call was made. (N.T. Trial, 9/12/12 p.m. at 101-102).

33

This Court finds that the minimal prejudice which may have resulted from Detective Glucksman's testimony, the direct admonition by the Court and the cautionary instruction given to the jury were adequate to overcome any potential prejudice. No abuse of discretion occurred with regard to the denial of Appellant's Motions for Mistrial.

The fifth and final issue raised on appeal is that this Court erred by denying Appellant's pretrial Motion In Limine to preclude the Commonwealth from introducing evidence of Appellant's prior bad acts during its case in chief. In his Motion and at the suppression hearings Appellant averred that the Commonwealth had notified Appellant of its intent to present evidence of the facts underlying a December 7, 2009 burglary in which he pleaded *nolo contendere.* In his Motion, Appellant argued that such evidence should not be introduced pursuant to Pa.R.E. 404(b) because the introduction of his prior criminal record would be more prejudicial than probative.[25] Appellant cited the case of <u>Commonwealth v. Lockuff</u>[26] to assert that Appellant's conduct in the Adams County incident is not so distinctive to be viewed as a signature of a perpetrator. Appellant requested that the Court exclude such evidence from trial.

In its Answer to Appellant's Motion, the Commonwealth specified that it would seek to introduce facts underlying Appellant's Adams County burglary conviction to show that it was part of a common plan of burglarizing homes in Central Pennsylvania and to prove his identity as the perpetrator of the scheme.

---

[25] In his Omnibus Pretrial Motion, Defendant erroneously referred to Pa.R.Cr.P. 404(B) as the means by which the Commonwealth intended to introduce evidence of prior criminal convictions and/or bad acts. However, there is no Rule of Criminal Procedure 404(B), and as the issue relates to the admissibility of evidence at trial, this Court believes that Appellant meant to cite Pa.R.E. 404(b).

[26] 813 A.2d 857 (Pa. Super. 2002).

34

Appellant pleaded *nolo contendere* to a burglary charge brought in Adams County relating to an incident which occurred on December 7, 2009. During the first suppression hearing, the Commonwealth made a proffer to this Court as to why the facts underlying the Adams County case were relevant and admissible as part of the Commonwealth's case in chief in Dauphin County.[27] (N.T. Pretrial, 6/28/12 at 81-82). The Commonwealth's position was that the underlying facts of the Adams County incident were admissible under the exception provided in Pa.R.E. 404(b) to prove identity and *modus operendi*. (N.T. Pretrial, 6/28/12 at 82). The Commonwealth argued that it would support its position by having witnesses who were part of the Adams County case testify to Watson's identity, the red truck he fled the scene in, how the owner of the truck permitted Watson to use it, how the truck is connected to other burglaries, how, chronologically, the burglary occurred within the string of burglaries that resulted in the instant charges, and how the manner in which he broke into the victim's house was very similar to several of the other burglaries. (Id.; N.T. Pretrial, 9/10/12 at 8-9).

Appellant's position before this Court is that for Rule 404(b) to apply and permit the evidence to be admitted to show identity and common scheme or plan, the facts must establish that the circumstances are so distinctive and nearly identical as to become a signature of a perpetrator. (N.T. Pretrial 6/28/12 at 82-83). Appellant cited Lockcuff to argue that some of the similarities that the Commonwealth is relying upon, such as kicking in a door to gain access to a house are not very distinctive because

_____

[27] The Commonwealth agreed on the record that because he pleaded *nolo contendere*, evidence of the conviction itself is inadmissible. (N.T. Pretrial, 6/28/12 at 81; N.T. Pretrial, 9/10/12 at 7-8).

35

there are only a few ways to break into a house – through a window or a door. (Id.)

Appellant added that the Adams County break in occurred through a garage door when

other residences were entered through a front or back door, that the red truck was not

used in all the charged burglaries, there were not eyewitnesses at each house, and he

did not always flee the scene. (N.T. Pretrial 6/28/12 at 85-86; N.T. Pretrial, 9/10/12 at

11-12

The Superior Court in the case of Commonwealth v. Weakley[28] provided a clear

recitation of the analysis to be undertaken when a challenge concerning the

admissibility of evidence, specifically evidence of other crimes or bad acts by a

defendant is asserted on appeal:

> The admission of evidence is a matter vested within the sound discretion
> of the trial court, and such a decision shall be reversed only upon a
> showing that the trial court abused its discretion. In determining whether
> evidence should be admitted, the trial court must weigh the relevant and
> probative value of the evidence against the prejudicial impact of that
> evidence. Evidence is relevant if it logically tends to establish a material
> fact in the case or tends to support a reasonable inference regarding a
> material fact. Although a court may find that evidence is relevant, the
> court may nevertheless conclude that such evidence is inadmissible on
> account of its prejudicial impact. Commonwealth v. Reid, 571 Pa. 1, 34,
> 811 A.2d 530, 550 (2002) (citations omitted). An abuse of discretion is not
> merely an error of judgment, but is rather the overriding or misapplication
> of the law, or the exercise of judgment that is manifestly unreasonable, or
> the result of bias, prejudice, ill-will or partiality, as shown by the evidence
> of record. Commonwealth v. Weakley, 972 A.2d 1182, 1188-89 (Pa.
> Super. 2009) (internal citations and quotations omitted).
>
> Jurisprudence regarding the admission of other crimes and bad acts is as
> follows:

---

[28] 972 A.2d 1182, 1188-89 (Pa. Super. 2009).

36

Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime *solely* to show his bad character and his propensity for committing criminal acts [See Pa.R.E. 404(b)(1)]. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. These other purposes include, *inter alia,* proving the identity of the person charged with the commission of the crime on trial. Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. Required, therefore, "is such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others."

In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes. Id.

Additionally, when prior bad act evidence is admitted against a defendant to prove something aside from action in conformity therewith, the defendant is entitled to an appropriate limiting instruction. Commonwealth v. Henkel, 2007 PA Super 333, 938 A.2d 433, 444 (Pa. Super. 2007) *citing* Commonwealth v. Hutchinson, 571 Pa. 45, 811 A.2d 556, 561 (2002); Commonwealth v. Billa, 521 Pa. 168, 555 A.2d 835, 842 (1989).

Upon examination of the way in which the burglaries for which Appellant was being tried instant cases were perpetrated, a clear pattern emerged. The burglaries took place at residences during daylight hours from roughly mid-morning until noon. The perpetrator entered the residence by kicking in a door whether it be back, front or garage door, and the items stolen were TVs, small electronics, jewelry and coins.

The Commonwealth represented to this Court that it intended to present witnesses involved with the Adams County incident that caught Appellant in the act of burglarizing a house, during daylight hours, where the victim came face to face with the perpetrator. A strange vehicle was in the driveway, a garage door had been kicked in and a TV lay in the garage. Appellant fled the scene in a red pickup truck that he later abandoned. Other evidence proffered was the testimony of a State Police Officer who was stationed out of the Gettysburg Barracks and determined that the red pickup truck belonged to Appellant's girlfriend Angela Greene. The Commonwealth also intended to present the testimony of Ms. Green that verified the truck was bought for the use of Appellant. Appellant was unable to explain to the State Police why the truck was abandoned; he said it had been stolen but never made a report or claimed it. Additionally, the Commonwealth planned to present testimony that showed usage of Appellant's cellular phone at the time of the Adams County incident and in the same vicinity.

Even though Appellant pointed out that some of the burglaries involved two other cars, a gold car and a gray car, the Commonwealth argued that the method by which the burglaries were perpetrated was the same and evidence would be presented to link Appellant to the use of those cars through other girlfriends.

This Court found the evidence sought to be admitted was overwhelmingly probative. The facts of the Adams County incident fit within the template that had emerged from the other charged burglaries. Coupled with eyewitnesses being able to testify to a physical description, the vehicle which was common to other burglaries and

38

the link between Appellant and the vehicle supports this Court's finding. At the pretrial hearing, Detective Glucksman also testified to investigating a string of daylight residential burglaries because of an emerging pattern and Appellant was a suspect. (N.T. Pretrial, 6/28/12 at 91-95; C-Exh. 2).

When ruling upon Appellant's motion, this Court recognized the possible prejudicial impact of admitting the evidence of the facts underlying the Adams County case, however we found that the probative value of proving identity of the perpetrator and a common scheme or *modus operendi* present in the burglaries for which he was on trial outweighed any prejudice. To that point, the Court emphasized to the Commonwealth that there would be "no reference as to this Adams County episode that he was arrested charged or convicted of..." the crime. (N.T. Pretrial, 9/10/12 at 12-13). Of further import in this case is this Court's explicit limiting instruction given to the jury prior to deliberation regarding the evidence presented about the Adams County incident. This Court explained that the evidence was presented to the jury for a very limited purpose, more specifically:

> This evidence is for the purpose of tending to show the type of conduct
> that this defendant may have been engaged in. This evidence must not be
> considered by you in any other way other than the purpose I just stated.
>
> ******
>
> You must not regard this evidence as showing the defendant is a person
> of bad character or criminal tendencies which you might be inclined to
> infer guilt. You can consider that testimony if it sheds any light as to a link
> to the automobile in question in this case, I believe the Commonwealth's
> contention is it was the pickup truck and the method of operation that the
> defendant may have allegedly used in some of these other incidents. It is
> for that limited purpose. (N.T. Trial, 9/14/12 at 14-15).

39

This Court properly exercised its discretion by admitting evidence of the factual basis underlying the Adams County incident for the purpose of proving identity and method or *modus operendi* in the Dauphin County cases.

This Court concludes that Appellant's claims of error are without merit.


RICHARD A. LEWIS, JUDGE


MEMORANDUM OPINION DATED: *October 28, 2013*


DISTRIBUTION: 10/28/13 @ 10:52
Stephen R. Zawisky, Esq., Sr. Deputy District Attorney
Eric A. Delp, Esq., Assistant Public Defender, Dauph. Co. Public Defender's Office
Superior Court Prothonotary
Clerk of Courts
FILE COPY – JUDGE RICHARD A. LEWIS

40